UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MICHAEL GRESHAM,

           Plaintiff,                          Case No. 2:14-cv-253

v.                                                  Honorable Robert Holmes Bell

ROBERT NAPEL, et al.,

            Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Heyns. The Court will serve the complaint against Defendants Napel, John Hill, Nadeau, Viitala, Larock, Gieson, Brown, Alexander, Place, Contrares, Marshall, Caron, Peden, Johnson, Pascoe, Meden, Eyke, Salmli, Robar, Rose, Moore, Rathburn-Miller, Oshier,

Bailey-Webb, Wijayagunaratne, Montgomery, James, Scott, Larry Hill, Derosie, Gallippo-Sebaly, Larsen, and Young.

## Discussion

### I. Factual allegations

Plaintiff Michael Gresham, a state prisoner currently confined at the Ionia Correctional Facility (ICF), filed this *pro se* action pursuant to 42 U.S.C. § 1983 against Defendants Warden Robert Napel, Corrections Officer John Hill, Corrections Officer S. Nadeau, Darrin A. Viitala, Sergeant L. Larock, Kristen Gieson, Lieutenant Robert Brown, Deputy Jim Alexander, Deputy Shane Place, Inspector Jeff Contrares, Inspector Lincoln Marshall, Glenn Caron, Grievance Coordinator Amanda Peden, Daphne M. Johnson, Psychologist Fred Pascoe, Terry Meden, Paul Eyke, Mandi Salmi, Amy Robar, Angela J. Rose, Angela Moore, Sarah Rathburn-Miller, Tom Oshier, Robin J. Bailey-Webb, Dr. Wijayagunaratne, Shannon Montgomery, R.N., Brenda James, R.N., Charles Scott, R.N., Larry Hill, R.N., Peggy Derosie, Denise Gallippo-Sebaly, R.N., Peggy Larsen, R.N., Matt D. Young, and Dan Heyns.

Plaintiff's handwritten complaint consists of fifty-nine pages of alleged wrongs committed by prison officials and health care professionals, and is largely incomprehensible. Many claims asserted by Plaintiff relate to individuals who are not named as Defendants in this case, but appear to have been named by Plaintiff in previous lawsuits. The court will not address claims against non-parties to this action.

In his complaint, Plaintiff alleges that on November 10, 11, and 12 of 2014, Defendants John Hill and Nadeau imitated walking like someone who had something wrong with his anus and told Plaintiff that he was going to be screwed in the "ass" again, the way that he was

in 2009 by Robert White and David Peterson. Defendants John Hill and Nadeau said that White and Peterson got away with it because Timothy P. Greeley and R. Allan Edgar were on the MDOC payroll.

On November 11, 2014, Defendant John Hill told Plaintiff that he had heard about Plaintiff trying to write a grievance on him and his co-workers. Defendant John Hill stated, "Go ahead and kill yourself besides my porter Gillen has a little surprise for you but here's a small taste of it." Defendant John Hill then slammed Plaintiff's breakfast tray into his abdomen. Plaintiff states that he has three hernias and this caused him to suffer extreme pain.

Plaintiff alleges that on November 13, 2014, he mailed documents to Defendants Johnson and Heyns, asserting that Defendants Viitala, Nadeau, and John Hill were sexually abusing him. Plaintiff claims that Defendants Nadeau, Viitala, John Hill, Peden, Caron, Larock, Brown, Napel, Alexander, Place, Marshall, and Contrares paid inmate Gillen #585204 to assault him with cleaning fluids and bodily fluid from inmate Lazarus, who has Hepatitis C. Inmate Gillen succeeded in striking Plaintiff on the face, head, and eyes, as well as contaminating Plaintiff's legal and personal property. Plaintiff claims that he now suffers from permanent partial blindness as a result of the assault. Defendant Nadeau stood by and observed the assault.

Plaintiff alleges that he had previously been assaulted by prisoner Lee on March 22, 2013, and that his requests for protective custody were denied by Defendants Naple, Alexander, Marshall, and Viitala in 2013 and 2014. As part of a cover-up for Defendants' misconduct, Plaintiff was written a misconduct ticket for assaulting inmate Gillen. Defendant Larock subsequently told Plaintiff that he knew Plaintiff had not assaulted Gillen, but stated that Plaintiff needed to stop filing paperwork and that Plaintiff could not win. Defendants Larock and Brown, as well as Captains

Peterson, Dahl, and Commerence all had authorization to dismiss the misconduct charge and place Plaintiff in protective custody. Instead, they covered up the assault by refusing to assist Plaintiff.

On November 17, 2014, Plaintiff met with Defendant Peden and Hearing Investigator Rick H. Mohr, and explained that he did not assault Gillen by spitting on him and that the video of the incident supports Plaintiff's version of events. Peden and Mohr told Plaintiff that they were going to cover up for their co-workers and that Plaintiff was the "bad guy." Defendant Peden and Hearing Investigator Mohr refused Plaintiff's request for inmate witnesses Keating and Penigar, as well as for video evidence. In addition, Hearing Officer Mohrman refused to recuse himself from conducting the hearing on the misconduct. Plaintiff claims that he had previously sued Mohr and Mohrman in Case No. 2:09-cv-231. Plaintiff attempted to appeal the misconduct conviction, but Defendant Gieson told Plaintiff that Defendants Johnson and Young had instructed her to destroy Plaintiff's appeal documents so he could not exhaust his claims.

Plaintiff states that Defendants Meden, Pascoe, Oshier, Eyke, Boudreau, Rathburn-Miller, Bailey-Webb, Crandall-Willims, Robar, Salmi, and Patel falsified Plaintiff's mental health records to indicate that Plaintiff was psychotic, so that Plaintiff could be forcibly medicated with Haldol and Prolixin. Plaintiff claims that medical Defendants Derosie, Gallippo-Sebaly, Larsen, Moore, Rose, James, Larry Hill, Scott, Pascoe, Montgomery, and Wijayagunaratne all refused to provide him with treatment for rabies after he was bitten by a bat. Plaintiff even captured the bat in order to prove that he had been bitten. Plaintiff states that Defendants Gallippo-Sebaly and Montgomery told him that they released the bat and that rabies treatment was too expensive. Plaintiff also states that between September 9, 2014, and September 17, 2014, Defendants Nadeau, Hill, and Viitala refused to log in the logbook that Plaintiff had been bitten by a bat or to obtain

medical treatment for him. Defendants Nadeau, Hill, and Viitala told Plaintiff that they wanted him to die from rabies so that staff would not have to deal with his lawsuits.

In 2013, Plaintiff ingested a razor in an attempt to get treatment for his two inguinal hernias and umbilical hernia. Plaintiff suffered from severe stomach pains and bloody stools from 2013 through December of 2014, and filed medical kites in an attempt to gain treatment. Plaintiff was refused treatment by Defendants Derosie, Gallippo-Sebaly, Larsen, Moore, Rose, James, Larry Hill, Scott, Pascoe, Montgomery, and Wijayagunaratne. Plaintiff claims that physicians at hospitals in Marquette, Munising, Ionia, and at War Memorial Hospital all recommended that he receive surgery for his hernias. On October 21, 2014, Plaintiff was seen by Defendants Wijayagunaratne and James, who refused Plaintiff's requests for rabies treatment. Defendants Wijayagunaratne and James then told prison staff to make Plaintiff sign a form saying that he had refused treatment. Plaintiff refused and Corrections Officer Dauphinais punched Plaintiff in the side of his head while Corrections Officer Pete twisted Plaintiff's right arm.

Plaintiff claims that Defendant Pascoe encouraged Plaintiff to commit suicide and forcibly medicated Plaintiff in order to make him appear to be mentally ill. Defendant Pascoe also refused to take Plaintiff off observation or to speak to Attorney General Michael R. Dean or Magistrate Judge Greeley. Plaintiff states that in September of 2012, Defendant Pascoe told him that because Plaintiff filed too much paperwork, he planned to falsify mental health records to make it appear as if Plaintiff was delusional, a malingerer, or trying to manipulate the system.

Plaintiff claims that he was placed on suicide observation was so that Defendants could confiscate his litigation materials and read them. Plaintiff was taken to an observation cell, was stripped down and placed naked in restraints, which caused pain in his shoulders, arms, and legs,

and cut off circulation to his extremities. Plaintiff claims that the cell was freezing cold and was covered in feces, blood, mucus, and urine. Defendants Pascoe, Peden, and Meden were responsible for Plaintiff's placement in the cell, as well as for him being escorted naked across the yard, which exposed him to freezing cold and the taunts of other inmates. Between November 17, 2014, and November 23, 2014, Plaintiff asked Defendants Pascoe, Meden, Eyke, Salmli, Robar, and Rose if he could be removed from observation, but they told Plaintiff that they were tired of him filing grievances and that observation status was a punishment for that conduct.

Defendants Moore and Meden came to Plaintiff's cell and he explained that he was having side effects from the medications he was taking against his will, including throat irritation, chest pains, and seizures. Defendant Meden told Plaintiff that maybe Plaintiff would learn to stop filing lawsuits. Defendants continued to force Plaintiff to take anti-psychotic medications, despite the fact that Plaintiff was not mentally ill. Plaintiff states that from March of 2013, through November 17, 2014, and from December 6, 2014, through December 10, 2014, Defendants Oshier, Eyke, Meden, Rathburn-Miller, Bailey-Webb, Salmli, Robar, Pascoe, Viitala, Giesen, Alexander, Place, Contrares, Marshall, and Napel all agreed to forcibly inject Plaintiff with "Haldo Prolixin and other Antipsychotics."

On October 13, 2014, Defendants Contreras, Marshall, and Viitala removed legal material and evidence from Plaintiff's cell, including affidavits of fellow inmates who had witnessed Defendants' misconduct. In addition, Defendants were able to learn who Plaintiff's witnesses were so that they could pressure the witnesses into changing their stories. Plaintiff claims that Defendants violated his First, Eighth and Fourteenth Amendment rights. Plaintiff seeks damages and equitable relief.

II.  <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must

show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Heyns was personally involved in the activity which forms the basis of his claims. Defendant Heyns' only role in this action involves the denial of administrative grievances or the failure to act. Defendant Heyns cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendant Heyns are properly dismissed for lack of personal involvement.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Heyns will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Napel, John Hill, Nadeau, Viitala, Larock, Gieson, Brown, Alexander, Place, Contrares, Marshall, Caron, Peden, Johnson, Pascoe, Meden, Eyke, Salmli, Robar, Rose, Moore, Rathburn-

Miller, Oshier, Bailey-Webb, Wijayagunaratne, Montgomery, James, Scott, Larry Hill, Derosie, Gallippo-Sebaly, Larsen, and Young.

        An Order consistent with this Opinion will be entered.


Dated: August 20, 2015                       /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE