UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL GRESHAM,

    Plaintiff,

v.

Case No. 2:14-cv-00253
HON. ROBERT HOLMES BELL

ROBERT NAPEL, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff Michael Gresham, a prisoner incarcerated in the Ionia Correctional Facility, filed a 42 U.S.C. § 1983 complaint naming 35 Defendants and asserting multiple claims against unrelated Defendants. Defendants filed motions to sever based on misjoinder of parties and claims (ECF No. 103, and 108). Plaintiff has responded and has requested leave to add an additional defendant (ECF No. 110).

Plaintiff alleges several unrelated claims of assault, abuse, and denial of medical treatment against Warden Robert Napel, C/O John Hill, C/O S. Nadeau, Darrin Viitala, Sgt. L. LaRock, Kristen Gieson, Lt. Robert Brown, Deputy Jim Alexander, Deputy Shane Place, Inspector Jeff Contrares, Inspector Lincoln Marshall, Glenn Caron, Grievance Coordinator Amanda Peden, Daphne Johnson, Psychologist Fred Pascoe, Terry Meden, Paul Eyke, Mandi Salmli, Amy Robar, Angela Rose, Angela Moore, Sarah Rathburn-Miller, Tom Oshier, Robin Bailey-Webb, Dr. Wijayagunaratne, RN Shannon Montgomery, RN Brenda James, RN Charles Scott, RN Larry Hill, Peggy Derosie, RN Denise Gallippo-Sebaly, RN Peggy Larsen, and Matt Young.

Plaintiff first alleges that on November 13, 2014, he was assaulted by another inmate, Gillen #585204, who sprayed cleaning fluids and bodily fluids on Plaintiff. According to Plaintiff, RUM Viitala and C/Os John Hill and Scott Nadeau paid Gillen to assault Plaintiff. Plaintiff then alleges that he has been repeatedly assaulted by gang members and that Warden Napel, Deputy Warden Alexander, Shane Place, Lincoln Marshall, and RUM Viitala denied his requests for protective custody in 2013 and 2014.

Plaintiff alleges that in 2013 and 2014, Psychologists Pascoe and Miller, Community Mental Health Service Manager Eyke, Clinical Social Workers Robare and Bailey-Webb, State Administrative Manager Osier, and RN Salmli falsified his mental health records, indicating that he was psychotic and mentally ill and that he was forcibly medicated with Haldol and Prolxin. Plaintiff then alleges that after an inmate released a bat in his cell, the bat bit him and Registered Nurse Manager James and RN Gallippo-Sebaly failed to provide him with appropriate medical treatment. Plaintiff then alleges that on November 10, 11, and 12, C/Os John Hill and Scott Nadeau came to his cell and threatened Plaintiff with sexual assault.

Plaintiff alleges that he filed grievance requests with Grievance Coordinator Caron and Departmental Technician Peden on "November 13, 12, 11" and that on November 11, 2014, C/O John Hill came to Plaintiff's cell and encouraged him to commit suicide as a result of the grievance he was trying to file. C/O Hill then allegedly struck Plaintiff in the abdomen with a food tray causing him extreme pain.

Plaintiff asserts that C/O LaRock told Plaintiff to stop filing paperwork and that he would be sent to segregation for assaulting prisoner Gillen. C/O LaRock and Lt. Brown then strapped Plaintiff onto a restraint chair and escorted him to segregation. Plaintiff asserts that this conduct aided in the concealment of Defendants' misconduct. Plaintiff then claims that on November 17,

2014, he met with Department Technician Peden and others and explained his defense to the assault misconduct, to which the Defendants allegedly responded that they would "cover up for their co-workers." Plaintiff then alleges that from 2013 through 2014 he requested protective segregation from Warden Napel, Deputy Warden Alexander, RUM Viitala, ARUM Giesen, Inspector Contreras, Grievance Coordinator Caron, Departmental Technician Peden, Psychologist Pascoe, Shane Place, Lincoln Marshall, and MDOC Office of Legal Affairs Administrator Johnson, but they did nothing. Plaintiff was eventually assaulted by prisoner Lee #586559, as well as by prisoner Gillen #585204.

Plaintiff alleges that sometime between November and December 1-7, he gave ARUM Giesen his misconduct appeal, but was informed that MDOC Office of Legal Affairs Administrator Johnson and Rehearing Specialist Young allegedly sent back the misconduct appeal with instructions to destroy it. Plaintiff alleges that this was done in an effort to prevent him from exhausting his administrative remedies and filing suit. Plaintiff then alleges that in 2013, he ingested a razor that caused blood in his stool and severe stomach pain. Despite numerous medical kites through 2014, Plaintiff alleges that Psychologist Pascoe, Registered Nurse Managers James and Scott, and RNs Gallippo-Sebaly, DeRosie, Montgomery, Moore, and Larry Hill denied him medical treatment. Lastly, Plaintiff alleges that on September 10, 2012, Psychologist Pascoe encouraged him to commit suicide and forcibly medicated him so he would appear mentally ill. Plaintiff also claims that Psychologist Pascoe refused to take him off suicide observation so that he could participate in a pretrial conference.

Federal Rule of Civil Procedure 20(a)(2) permits the joinder of defendants in one action under certain circumstances:

> **(2) Defendants.**  Persons . . .may be joined in one action as defendants if:

>    **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
>    **(B)** any question of law or fact common to all defendants will arise in this action.

Thus "[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George,* the court severed unrelated claims:

> "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50–claim, 24–defendant suit produced but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g). George was trying not only to save money but also to dodge that rule. He hoped that if even 1 of his 50 claims were deemed non-frivolous, he would receive no "strikes" at all, as opposed to the 49 that would result from making 49 frivolous claims in a batch of 50 suits.

*Id.*

Where a plaintiff improperly joins claims and defendants, Federal Rule of Civil Procedure 21 provides that the court may "on just terms" either (1) add or drop parties or (2) sever the claims against the parties. *Kitchen v. Heyns*, 802 F.3d 873, 875 (6th Cir. 2015). "To remedy misjoinder, . . . a court may not simply dismiss a suit altogether." *DirecTV, Inc. v. Leto*, 467 F.3d

842, 845 (3d Cir. 2006). "Instead, the court has two remedial options: (1) misjoined parties may be dropped 'on such terms as are just'; or (2) any claims against misjoined parties 'may be severed and proceeded with separately.'" *Id.* (citation omitted). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *Id.* This court has severed unrelated claims in prisoner civil rights actions by dismissing the unrelated claims and parties without prejudice so that the plaintiff can file new causes of action in separate lawsuits. *Alexander v. Fillion*, 2:15-cv-13, (ECF No. 95) (W.D. Mich. October 7, 2015); *Cary v. Robinson*, 13-cv-431, (ECF No. 47) (W. D. Mich. Sept. 23, 2014), *Carney v. Treadeau*, 07-cv-83, (ECF No. 52) (W.D. Mich 2008).

The court should be mindful of a party's ability to resubmit dismissed claims in new causes of action. As Judge Neff pointed out in *Crawford v. Prison Health Services*, 1:12-cv-409 (ECF No. 46) (W.D. Mich. 2012):

> At least three judicial circuits have interpreted "on terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F. 3d 741, 745 (8th Cir. 2008). (quoting *Elmor v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)) see also *DirectTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandland*, 532 F.3d at 746; *DirectTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

*Id.* at 5, PageID. 545. Clearly, dismissal of parties or claims could cause a statute of limitations problem. However, in this case dismissal without prejudice will not cause a timing problem because the statute of limitations for § 1983 claims in Michigan is three years. *Id.* Plaintiff's earliest claims

accrued in September 2012. Plaintiff filed this lawsuit on December 18, 2014. Michigan law tolls the "limitation period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 App'x 610, 611 (6th Cir. 2003). Plaintiff has sufficient time to re-file his dismissed claims if he chooses to do so.

Therefore, it is recommended that the court dismiss Plaintiff's misjoined claims without prejudice. It is recommended that a single claim be allowed to proceed, specifically Plaintiff's claim that RUM Viitala, Corrections Officer J. Hill, and Corrections Officer Nedeau paid Gillen #585204 to assault him, and the remaining defendants and claims be dismissed without prejudice.[1]

Accordingly, it is recommended that Defendants' Motion to Sever Based Upon Misjoinder of Parties and Claims (ECF No. 103, and 108) be granted and that Defendants Napel, LaRock, Gieson, Brown, Alexander, Place, Contrares, Marshall, Caron, Peden, Johnson, Pascoe, Meden, Eyke, Salmli, Robar, Rose, Moore, Rathburn-Miller, Oshier, Bailey-Webb, Wijayagunaratne, Montgomery, James, Scott, L. Hill, Derosie, Gallippo-Sebaly, Larsen, Young and unknown parties be dismissed from this action without prejudice. It is further recommended that Plaintiff's request to add an additional defendant (ECF No. 110) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

---

[1] On January 16, 2016, Judge Neff issued an order barring Plaintiff Michael Gresham from filing any future lawsuits that raises claims arising out of more than a single transaction. Case 1:15-cv-1067, ECF No. 10.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:  7/21/2016                                         /s/ *Timothy P. Greeley*
                                                TIMOTHY P. GREELEY
                                                UNITED STATES MAGISTRATE JUDGE